(d) Network Engines was followed by securities analysts employed by major brokerage firms who wrote reports which were disseminated to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

45.   As a result of the foregoing, the market for Network Engines's securities promptly digested current information regarding Network Engines from all publicly available sources and reflected such information in Network Engines's stock price. Under these circumstances, all purchasers of Network Engines's securities during the Class Period suffered similar injury through their purchase of Network Engines's securities at artificially inflated prices, and a presumption of reliance applies.

## NO SAFE HARBOR

46.   The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements alleged herein. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made, and to the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Alternatively, to the extent that the statutory safe harbor is applicable to any forward-looking statements alleged herein, defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular maker of the statement knew that the particular forward-looking statement was false and misleading, and/or the forward-looking statement was authorized and/or approved by an executive officer of Network Engines who knew that those statements were false and misleading when made.

## FIRST CLAIM

### Violation Of Section 10(b) Of
### The Exchange Act Against And Rule 10b-5
### Promulgated Thereunder Against All Defendants

47. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

48. During the Class Period, defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, succeeded in:

(i) deceiving the investing public, including plaintiff and other Class members, as alleged herein;

(ii) enabling defendant Genovesi to sell 75,000 shares of his personally-owned Network Engines stock at artificially inflated prices for gross proceeds of approximately $781,300; and

(iii) cause plaintiff and other Class members to buy Network Engines's securities at artificially inflated prices.

In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

49. Furthermore, defendants:

(a) employed devices, schemes, and artifices to defraud;

(b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and

(c) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market

prices for Network Engines's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All defendants are sued either as primary participants in the wrongful and illicit conduct charged herein or as controlling persons as alleged below.

50.    Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations and future financial and business prospects of Network Engines as alleged herein.

51.    These defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Network Engines's value and performance and continued substantial growth, which included the making of, or the participation in the making of, false and misleading statements of material facts and omitting to state material facts necessary in order to make the statements made about Network Engines and its business operations and future financial and business prospects in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of Company securities during the Class Period.

52.    Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts:

(i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team and/or had control thereof;

(ii) each of these defendants, by virtue of his responsibilities and activities as a senior officer and/or director of the Company was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports;

(iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants herein and was advised of and had access to other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and

(iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

53. The defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Network Engines's operating condition and future business and financial prospects from the investing public and supporting the artificially inflated prices of its securities. As demonstrated by defendants' false and misleading overstatements and misstatements of the Company's business, operations and earnings throughout the Class Period, defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

54. As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as alleged herein, the market price of Network Engines's securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of Network Engines's publicly-traded securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by defendants, or upon the integrity of the market in which the securities trade, and/or on the absence of material adverse information that was known to or recklessly disregarded by defendants but not disclosed in public statements by defendants during the Class Period, plaintiff and the other Class members purchased or otherwise acquired Company securities during the Class Period at artificially high prices and were damaged thereby.

55. At the time of said misrepresentations and omissions, plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had plaintiff and the other Class members and the marketplace been aware of the truth regarding the problems that Network Engines was experiencing, which were concealed and not disclosed by defendants, plaintiff and the other Class members would not have purchased or otherwise acquired Network Engines securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they actually paid for said securities.

56. By virtue of the foregoing, defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

57. As a direct and proximate result of defendants' wrongful conduct, plaintiff and the other Class members have suffered damages in connection with their respective purchases and sales of Network Engines' securities during the Class Period.

## SECOND CLAIM

### Violation Of Section 20(a) Of
### The Exchange Act Against the Individual Defendants

58.  Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

59.  The Individual Defendants acted as controlling persons of Network Engines within the meaning of Section 20(a) of the Exchange Act as alleged herein. Due to their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public during the Class Period, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and distribution of the various statements which plaintiff contends herein are false and misleading. The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

60.  In particular, each of the defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

61. As set forth above, Network Engines and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' wrongful conduct, plaintiff and other Class members have suffered damages in connection with their acquisition of the Company's securities during the Class Period.

**WHEREFORE**, plaintiff prays for relief and judgment, as follows:

(a) Determining that this action is a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as Class representative pursuant to Rule 23 of the Federal Rules of Civil Procedure, and plaintiff's counsel as Lead Counsel;

(b) Awarding compensatory damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c) Awarding plaintiff and the Class their reasonable costs and expenses incurred in this action, including attorneys' fees and expert fees; and

(d) Such other and further relief as this Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated:    January 6, 2004                      Edwin Powell Miller, Plaintiff

                                                By his attorneys,


                                                _____
                                                Thomas G. Shapiro BBO #454680
                                                Theodore M. Hess-Mahan BBO #557109
                                                **SHAPIRO HABER & URMY LLP**
                                                75 State Street
                                                Boston MA  02109
                                                (617) 439-3939



                                                **WOLF POPPER LLP**
                                                Robert C. Finkel
                                                Michael A. Schwartz
                                                Kent A. Bronson
                                                845 Third Avenue
                                                New York, NY 10022
                                                (212) 759-4600


                                                **Attorneys for Plaintiff**